# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**RODNEY DALE HARMON**                                                                **PETITIONER**
**ADC #170497**

VS.                                No. 4:24-cv-00718-BRW-ERE

**DEXTER PAYNE, Director,**
**Arkansas Division of Correction**                                                **RESPONDENT**

## RECOMMENDED DISPOSITION

This Recommendation ("RD") has been sent to United States District Judge Billy Roy Wilson. You may file objections to all, or part, of this RD. Objections should be specific, include the factual or legal basis for the objection, and must be filed within fourteen days. If you do not file objections, you risk waiving the right to appeal questions of fact and Judge Wilson can adopt this RD without independently reviewing the record.

## I.    Introduction

Rodney Dale Harmon, an inmate at the Ouachita River Correctional Unit of the Arkansas Division of Correction, filed, through counsel, a petition for habeas corpus pursuant to 28 U.S.C. § 2254. *Doc. 1.* Mr. Harmon's petition should be dismissed with prejudice because the single claim he presents was adjudicated and

rejected on the merits in state court, and relitigation is precluded under 28 U.S.C. § 2254(d).[1]

## II.   Background

In September 2015, officers with the United States Drug Enforcement Agency ("DEA"), the Faulkner County, Arkansas Sheriff's Office, and the Twentieth Judicial District Drug Task Force executed a search warrant for Mr. Harmon's home. *Harmon v. State*, 2020 Ark. 217, at 1 (2020). The officers found over six pounds of methamphetamine, multiple firearms, ammunition, baggies, scales, and cash. *Id*. Mr. Harmon was charged in the Faulkner County, Arkansas Circuit Court with multiple drug and gun-related crimes. *Id*.

In January 2017, while the charges against Mr. Harmon were pending, the lead prosecutor learned that an HBO film crew, making a documentary called *Meth Storm*, was present during the September 2015 search of Mr. Harmon's home. *Id*. at 2. The prosecutor notified defense counsel about the film crew's presence but stated that she did not have possession of any related footage. *Id*. The prosecutor gave defense counsel contact information for a film crew member, the HBO legal department, and DEA personnel who had possibly approved the presence of the film crew. *Id*. at 2-3.

---

[1] This provision establishes the deferential review applied by federal habeas courts when reviewing claims resolved on the merits in state court. See *infra* discussion at Section III.

Mr. Harmon's attorney requested and received a trial continuance for the purpose of obtaining footage of the search, but he was unable to obtain the footage from HBO. *Id*. at 2. Mr. Harmon then asked the trial court to compel production of the footage. *Doc. 4-2 at 163-164*. The trial court declined to compel the state to obtain the footage but ordered "whomever" possessed it to turn it over to Mr. Harmon and his attorney. *Doc. 4-2 at 169*. That order produced no results.

On the first day of trial, the trial court: (1) denied Mr. Harmon's motion to continue trial until such time as the video was obtained; and (2) granted the State's motion in limine to prohibit mention of the film crew's presence during the search. *Harmon v. State*, 2020 Ark. 217, at 3. The jury convicted Mr. Harmon of trafficking methamphetamine within 1,000 feet of a school-bus stop, simultaneous possession of drugs and firearms, possession of drug paraphernalia, and maintaining a drug premises within 1,000 feet of a school-bus stop. Mr. Harmon was sentenced to forty years in prison. *Id*. at 3-4.

On direct appeal, the Arkansas Court of Appeals reversed Mr. Harmon's drug trafficking conviction based on the trial court's use of a non-model jury instruction, *Harmon v. State*, 2019 Ark. App. 572, 11 (2019), but the Arkansas Supreme Court reversed that decision, reinstating all original convictions. *Harmon v. State*, 2020 Ark. 217, at 1 (2020).

Mr. Harmon filed a petition for postconviction relief under Arkansas Rule of Criminal Procedure 37 asserting that: (1) the presence of the HBO film crew during the search of his home violated his Fourth Amendment rights pursuant to *Wilson v. Layne*, 526 U.S. 603 (1999); and (2) he received ineffective assistance of counsel because his attorney failed to identify a *Wilson* violation and raise it as an independent ground to suppress the evidence seized in the search of his home.[2] *Doc. 4-9 at 13-21*.

The trial court denied the petition. *Doc. 4-9 at 39-40*. Mr. Harmon appealed. On December 7, 2023, the Arkansas Supreme Court affirmed the denial of postconviction relief, *Harmon v. State*, 678 S.W.3d 390, 392, 2023 Ark. 179, 2 (Ark., 2023), and on January 25, 2024, it denied a rehearing and issued its mandate. *Doc. 4-12*.

On August 23, 2024, Mr. Harmon filed the § 2254 petition now before the Court, raising a single claim: that his trial counsel rendered ineffective assistance by failing to move for the suppression of evidence based on the HBO film crew's presence during the search of his home.

---

[2] Mr. Harmon also argued that his trial attorney rendered ineffective assistance by failing to subpoena HBO to obtain footage of the search. *Doc. 4-9 at 17-19*. The trial court rejected this claim (*Id. at 40-51*), and Mr. Harmon did not pursue it in appealing the trial court's denial of postconviction relief. *Doc. 4-10 at 3*.

On September 19, 2024, Respondent filed a response (*Doc. 4*) asserting that the Arkansas Supreme Court's decision rejecting Mr. Harmon's claim is entitled to deference under 28 U.S.C. § 2254(d).

On October 31, 2024, Mr. Harmon filed a reply addressing Respondent's arguments for dismissal. *Doc. 8*.

### III.  Discussion

Mr. Harmon raises a single claim: His trial counsel was constitutionally ineffective for failure to move for suppression of evidence based on the film crew's presence during the search of his home "despite being made aware of a flagrant violation of the Fourth Amendment as construed by a unanimous . . . Supreme Court in *Wilson v. Layne*, 526 U.S. 603 (1999)." *Doc. 1 at 6*. The Arkansas Supreme Court rejected this claim on the merits on postconviction review.

Respondent argues that habeas relief is precluded under the deferential review standard for state court decisions mandated by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. § 2254(d). Section 2254(d) provides that when a state prisoner's federal claim has been adjudicated on the merits in state court, a federal court "shall not" grant an application for habeas relief unless the state courts' adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court;³ or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."⁴ "The question under [the] AEDPA is thus not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable–'a substantially higher threshold' for a prisoner to meet." *Shoop v. Twyford*, 142 S. Ct. 2037, 2043 (2022) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

The Arkansas Supreme Court assessed Mr. Harmon's ineffective assistance claim according to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which required Mr. Harmon to show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. *Harmon v. State*, 2023 Ark. 179, 4 (2023). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted).

---

³ A state court decision is "contrary to" clearly established federal law if the state court either "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

⁴ The state court's factual findings are subject to a deferential standard of review and presumed correct unless the petitioner can rebut those findings through "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also *James v. Bowersox*, 187 F.3d 866, 871 (8th Cir. 1999).

The Arkansas Supreme Court concluded that Mr. Harmon's ineffective assistance claim depended on an overly broad application of *Wilson v. Layne*, 526 U.S. 603 (1999) and that his trial attorney, who aggressively pursued suppression on other grounds, did not render ineffective assistance by failing to raise a novel argument. *Harmon v. State*, 2023 Ark. at 5 (citing W*eaver v. State*, 339 Ark. 97, 102 (1999)).

The Arkansas Supreme Court's decision was entirely reasonable. In *Wilson v. Layne*, 526 U.S. 603 (1999), homeowners sued for civil damages, claiming that officers violated their Fourth Amendment rights by bringing a photographer and reporter into their home to observe and record the execution of an arrest warrant. Ultimately, the case reached the Supreme Court,[5] which declared: "[I]t is a violation of the Fourth Amendment for police to bring members of the media or other third parties into a home during the execution of a warrant when the presence of the third parties in the home was not in aid of the execution of the warrant."[6] *Id*. at 614.

---

[5] In the proceedings below, the Fourth Circuit declined to decide whether officers violated the Fourth Amendment by permitting media ride-alongs during the execution of a warrant but held that given the uncertain state of law on the issue, the defendant officers were entitled to qualified immunity. *Wilson v. Layne*, 141 F.3d 111 (4th Cir. 1998). Recognizing a circuit split on whether media ride alongs infringe Fourth Amendment rights, the Supreme Court granted certiorari. *Wilson v. Layne*, 526 U.S. 603, 618 (1999) ("Between the time of the events of this case and today's decision, a split among the Federal Circuits in fact developed on the question whether media ride-alongs that enter homes subject the police to money damages.").

[6] The *Wilson* Court based its holding on the "overriding respect for the sanctity of the home embedded in our traditions since the origins of the Republic" and the fact that the presence of reporters at the home was unrelated to an objective of the authorized intrusion. *Wilson v. Layne*,

Pertinent to Mr. Harmon's ineffective assistance claim, the *Wilson* Court noted: "We have no occasion here to decide whether the exclusionary rule would apply to any evidence discovered or developed by the media representatives." *Id*. at 614 n.2. The Court thus left open whether evidence "discovered or developed by media representatives" could be subject to suppression under the exclusionary rule. Nothing in the *Wilson* ruling suggests that media presence alone would warrant the suppression of evidence seized by law enforcement.

Mr. Harmon does not contend that the HBO film crew present during the search of his home discovered or developed evidence, and he acknowledges that "the filmmakers were not acting in aid of the search, but rather were there for commercial purposes." *Doc. 1 at 21*. Instead, he faults his attorney for failing to move for the suppression of evidence that would have been seized by law enforcement with or without the film crew present.

The exclusionary rule deters police misconduct by preventing the use of evidence gained because of such conduct. *Hudson v. Michigan*, 547 U.S. 586, 592 (2006) (explaining that a condition of applying the exclusionary rule is that a constitutional violation was a "but-for" cause of obtaining evidence). In this case,

---

526 U.S. 603, 610-613 (1999). However, because the state of the law was not clearly established at the time of the search in *Wilson*, the Supreme Court held that the defendant officers in that case were entitled to qualified immunity.

the film crew's presence may have infringed Mr. Harmon's Fourth Amendment rights, but it did not render the evidence seized a product of unlawful police conduct. *Illinois v. Gates*, 462 U.S. 213, 223 (1983) (citations omitted) ("The question whether the exclusionary rule's remedy is appropriate in a particular context has long been regarded as an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct."). Especially given the lack of any connection between the discovery and seizure of inculpatory evidence and the HBO film crew's presence during the search, the Arkansas Supreme Court reasonably rejected Mr. Harmon's ineffective assistance claim, and the decision is entitled to deference under § 2254(d).

## IV.  Conclusion

IT IS THEREFORE RECOMMENDED that:

1. Petitioner Rodney Dale Harmon's § 2254 Petition for Writ of Habeas Corpus (*Doc. 1*) be DISMISSED with prejudice.

2. A Certificate of Appealability be DENIED. *See* 28 U.S.C. § 2253(c)(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

Dated 7 January 2025.

_____
UNITED STATES MAGISTRATE JUDGE